FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF FLINT v
CITY OF FLINT

Docket No. 50629. Submitted February 11, 1981, at Lansing.—Decided
March 16, 1981. Leave to appeal applied for.

The City of Flint assessed property owned by First Federal
Savings & Loan Association of Flint at 50% of a true cash
value of $750,000, based upon a cost-new-minus-depreciation
method of determining true cash value. First Federal petitioned
the Michigan Tax Tribunal for review of the assessment insist-
ing that the property should have been assessed at 50% of a
true cash value of $447,000, as determined by utilizing an
income capitalization method of determining true cash value.
The Tax Tribunal found that the income capitalization ap-
proach was inappropriate for determining value upon which to
base the assessment and further found that the value as
determined by the City of Flint was appropriate and reason-
able. First Federal appeals. *Held:*

Where fraud is not alleged, appellate review of determina-
tions of the Tax Tribunal is limited to the question of whether
the Tax Tribunal committed an error of law or adopted a
wrong principle. The Tax Tribunal did not commit an error of
law or adopt a wrong principle in sustaining the assessment
made by the respondent, City of Flint. The capitalization of
income method used by First Federal is ill-suited to property
where, as here, the owner is less interested in the income the
property will generate than in occupying a building uniquely
suited for the owner's special type of business.

Affirmed.

1. TAXATION — TAX TRIBUNAL — APPEAL — SCOPE OF REVIEW —
CONSTITUTIONAL LAW.

Appellate review of determinations of the Michigan Tax Tribunal
is limited, where fraud is not alleged, to the question of

REFERENCES FOR POINTS IN HEADNOTES

[1] 72 Am Jur 2d, State and Local Taxation § 787.

[2-5] 72 Am Jur 2d, State and Local Taxation § 759 *et seq.*

[3] Sale price of real property as evidence in determining value for
tax assessment purposes. 89 ALR3d 1126.

whether the Tax Tribunal committed an error of law or adopted a wrong principle (Const 1963, art 6, § 28).

2. TAXATION — REAL PROPERTY — LIMITATION OF ASSESSMENT — CONSTITUTIONAL LAW.

The Michigan Constitution provides that real property shall not be assessed in excess of 50% of true cash value (Const 1963, art 9, § 3).

3. TAXATION — REAL PROPERTY — DETERMINATION OF TRUE CASH VALUE.

There are three well-recognized and accepted methods for determining true cash value for purposes of taxation of real property: 1) market value as determined by comparable selling prices, 2) reproduction cost less depreciation, and 3) capitalization of income; any one of the three methods may be used so long as it is reasonably related to fair market valuation and is accurate.

4. TAXATION — TAX TRIBUNAL — REAL PROPERTY — DETERMINATION OF TRUE CASH VALUE.

It is the duty of the Michigan Tax Tribunal to select the method of determining true cash value for purposes of taxation of real property which, under the facts of each case, is most accurate.

5. TAXATION — REAL PROPERTY — VALUATION OF REAL PROPERTY — CAPITALIZATION OF INCOME.

The capitalization of income method of determining true cash value of real property for purposes of taxation is ill-suited to property where the owner is less interested in the income the property will generate than in occupying a building uniquely suited for the owner's special type of business.

*James C. Dillard,* for petitioner.

*Richard J. Figura,* City Attorney, and *Judith A. Fullerton,* Chief Assistant City Attorney, for respondent.

Before: CYNAR, P.J., and J. H. GILLIS and ALLEN, JJ.

ALLEN, J. Petitioner, First Federal Savings & Loan Association of Flint, appeals from a judg-

ment of the Michigan Tax Tribunal entered January 9, 1980, approving respondent City of Flint's assessment of petitioner's building at 50% of a true cash value of $750,000 rather than at 50% of a true cash value of $447,000 as requested by petitioner.

The property involved in this appeal is a seven-story office building occupying the northwest corner of south Saginaw and First streets, one of the prime locations in downtown Flint. Construction on the building was completed in 1926. The First National Bank occupied the main floor, the upper-floor offices at that time being rented to various professionals and small businesses. The bank closed during the depression and the main floor was then occupied for over 30 years by a women's apparel store. In 1966, petitioner bought the property for $675,000. Petitioner then spent approximately $475,000 to renovate the main floor, second floor (mezzanine) and basement. Floors three to seven were not changed when petitioner purchased the building. Until 1977, offices in those floors were rented to various professionals and small businesses. There was a high vacancy rate on these floors and, in 1976, the petitioner decided that they should be vacated. The last tenant moved out in mid-1977. In 1978, petitioner began renovating the third floor for its own use.

At the hearing before the Tax Tribunal, petitioner's expert witness testified that the market approach was not used as a basis for evaluation because of the lack of any comparable sales. He rejected the cost-new-minus-depreciation approach (hereinafter cost approach) on grounds that it is only appropriate when a building is new or when there is no other available means of appraisal. He explained that as a building ages the cost approach becomes subjective and less reflective of

market value. Accordingly, he found the income capitalization approach (hereinafter income approach) best suited for appraisal of the subject building. Because petitioner owned and occupied the building and there were no other tenants, the witness looked to comparable rentals paid by other downtown banks. Using these figures as a base and assuming an 11% capitalization rate, the witness determined a true cash value (based upon use of the basement, first and second [mezzanine] floors only) as follows:

| | |
|---|---|
| Gross Income | $94,200 |
| Expenses | 45,000* |
| Net Income | 49,200 |
| Cap Rate | ÷11% |
| Indicated Value | $447,273 |
| say | $447,000 |

*The taxes are included in this figure.

Respondent's expert appraiser for commercial property agreed that, since there were no recent sales of comparable properties, the market evaluation approach was unuseable. He rejected the income approach on grounds that the rentals paid by other financial institutions in Flint were under old leases or for less favorably situated buildings. Thus, he found the income approach highly speculative and arbitrary. He explained that banks are special users because they specially adapt buildings to their use and that many of the interior improvements made by the bank are valuable only to the bank and would be functionally obsolescent if the buildings were sold to a nonbank. He settled on the cost-new-minus-depreciation method using

the Marshall-Swift Valuation Manual, a universally-recognized reliable source, for estimating the cost new valuation for only the basement, main floor, mezzanine and third floor shell as follows:

| | |
|---|---:|
| Cost New (from Marshall-Swift Valuation Manual) | $982,454 |
| Physical Depreciation (34%) | 338,223 |
| Functional Obsolescence (3%) | 26,931 |
| Total Cost Less Depreciation | $617,300 |
| Site Valuation | 134,035 |
| Indicated Value | $751,335 |
| say | $750,000 |

In its opinion the Tax Tribunal found that the income approach was inappropriate for determining value upon which to base an assessment and further found that the value as determined by respondent was appropriate and reasonable.

"The income approach is based upon the assumption that an investor in income property expects a certain return upon his investment. The income approach does not provide for the inclusion of value which may be present by virtue of the appeal of property to the personal aesthetic tastes of prospective competitive purchasers. Indeed, the income approach *assumes* that the purchaser of income property decides whether he will buy, and for how much, solely upon the basis of the potential for income generation. The income approach does not provide for the inclusion of value which may be present in the form of enhancement of the purchaser's image. Petitioner is a financial institution whose success in business depends upon its image to a great degree. *If* its main office building has value in the form of enhancement of Petitioner's image, there is no place in the income approach in which such value will be reflected. * * *

"Respondent has supported the value upon which the assessment is based with data which appears to be both appropriate and reasonable. Further, the value as determined by Respondent is in keeping with the actual cost of acquisition and modernization by Petitioner."

Where fraud is not alleged, appellate review of determinations of the Tax Tribunal is limited to the question of whether the Tax Tribunal committed an error of law or adopted a wrong principle. Const 1963, art 6, § 28, *Northwood Apartments v City of Royal Oak,* 98 Mich App 721, 724; 296 NW2d 639 (1980). Since fraud is not charged in the instant case, the issue before us is whether the Tax Tribunal made an error of law or adopted a wrong principle in holding that the assessing municipality (1) may use the cost-new-minus-depreciation approach in assessing the subject building, and (2) is not required to assess the value of a parcel of real property by determining the price which could be obtained on the open market. Though the questions are interrelated, we will discuss them separately.

Const 1963, art 9, § 3 provides that real property shall not be assessed to exceed 50% of true cash value. *Gannon v Cohoctah Twp,* 92 Mich App 445, 449; 285 NW2d 323 (1979). There are three well-recognized and accepted methods for determining "true cash value", *viz.:* market value as determined by comparable selling prices, reproduction cost less depreciation, and capitalization of income. *Consumers Power Co v Big Prairie Twp,* 81 Mich App 120, 130; 265 NW2d 182 (1978), *Wolverine Tower Associates v City of Ann Arbor,* 96 Mich App 780, 781; 293 NW2d 669 (1980). Any of the three methods may be used so long as it is reasonably related to fair market valuation and is accurate. It is the duty of the Tax Tribunal to select

the method which under the facts is most accurate. *Ramblewood Associates v City of Wyoming,* 82 Mich App 342, 345-347; 266 NW2d 817 (1978), *Wolverine Tower, supra,* 782.

Since both petitioner and defendant agree that the absence of comparable sales precludes use of the market value approach, the issue boils down to the question of which of the two remaining methods of valuation was more suitable under the facts in this case. Did the Tax Tribunal err in concluding that the cost approach provides the best indication of value for the subject property? We think not. The Tax Tribunal rejected the income capitalization approach because of the absence of comparable rentals for the two buildings (Genesee Bank Towers and Michigan National Bank) which petitioner's appraiser used to determine gross income. Genesee Bank rents only a shell of a building without interior finish and is in a less favorable location. The Michigan National Bank lease is an old lease and the bank had installed all of its own improvements. Given the considerable variables between the First Federal Building and the two banks selected as comparables, we do not find the Tax Tribunal erred in rejecting the income method proposed by petitioner.

While no Michigan case has spoken to the issue, other jurisdictions have held that the capitalization of income method is ill-suited to property where, as here, the owner is less interested in the income the property will generate than in occupying a building uniquely suited for the owner's special type of business.

"* * * buildings not designed to produce income as such, but designed wholly or mainly for personal use or as a personal monument, to which the courts have held inapplicable the general rule that actual or potential

income is a factor to be considered in determining value for tax purposes." Anno: *Income or rental value as a factor in evaluation of real property for purposes of taxation,* 96 ALR2d 666, 711.

"Capitalization of income generally provides an acceptable and, in the absence of market data, a preferred method of valuing rental property (see *Matter of Pepsi-Cola Co v Tax Comm,* 19 App Div 2d 56, 60; 240 NYS2d 770, 776). *Where, however, a building is held for the owner's own use, and especially where the building bears the owner's name, income capitalization may not adequately reflect the property's total value." GRF, Inc v Board of Assessors of Nassau,* 41 NY2d 512; 362 NE2d 597, 598 (1977).

"Generally, market value provides the most reliable valuation for assessment purposes (see *People ex rel Parklin Operating Corp v Miller,* 287 NY 126, 129; 38 NE2d 465, 466). Unique properties for which there is no market are considered specialties and are valued by the cost basis *(Matter of County of Suffolk v C J Van Bourgondien, Inc,* 47 NY2d 507; 419 NYS2d 52; 392 NE2d 1236)." *Xerox Corp v Ross,* 71 App Div 2d 84; 421 NYS2d 475, 477 (1979).

The record discloses, and the Tax Tribunal so found, that the subject property was not acquired for rental or income purposes but was occupied solely by petitioner who spent some $1.15 million dollars in the acquisition and renovation of the building so as to make it both in appearance and function unique for the conduct of the banking business. Under the special facts of this case, we find that the income capitalization method of appraisal proposed by petitioner was properly rejected by the Tax Tribunal.

Did the Tax Tribunal place too much emphasis on the value of existing use of the building? Petitioner argues that, while the existing use of property may be the highest and best use, it does not necessarily represent the highest and best use to a

likely buyer, and it is the value to the buyer that is determinative of true cash value. Citing this Court's opinion in *Safran Printing Co v Detroit,* 88 Mich App 376; 276 NW2d 602 (1979), as authority, petitioner argues that by expressly rejecting the usual selling price on the Flint market and attributing a significant value to existing use of the building where such use bears little relationship to what a likely buyer on the open market would pay for the property, the Tax Tribunal imposes a use tax on the property owner. In *Safran* the Tax Tribunal's determination of value was overturned by this Court on grounds that the tribunal placed great weight on the existing use of the property as a printing plant and disregarded what it could bring in the market place. However, *Safran* is distinguishable on several grounds. First, unlike the bank building in the instant case, there was nothing unique about the *Safran* building. It was more like a warehouse than a printing plant. Second, the property was so run down and obsolete it could not be sold for its existing use but could be sold for warehouse purposes. In the case before us, the bank building was not obsolete or inefficient and conceivably could be sold to another bank. Third, numerous physical factors, both exterior and interior, distinguish the bank building from other nonbank office buildings in the downtown Flint area, whereas the *Safran* building was similar to many warehouse buildings located nearby. As was stated by the *Safran* Court:

"In the instant case the tribunal apparently attributed great weight to the fact that the subject property was being used as a printing plant, stating that this was the highest and best use of the property. Normally, existing use may be indicative of the use to which a potential buyer would put the property and is, there-

fore, relevant to the fair market value of the property. However, *in this case it is undisputed that the property is obsolete, inefficient, and could not be sold as a printing plant.* Only the prohibitive cost prevents Safran from relocating. It is evident, therefore, that under the facts of this case *the existing use of the property bears no relationship to what a likely buyer would be willing to pay for it.* \* \* \*

"The majority defends its position by characterizing the property as unique. It appears that the only thing particularly unique about the property is the fact that it is used as a printing plant despite being ill-suited for that purpose. \* \* \*

"Merely because property is put to an unusual use does not render it unique for purposes of property taxes. While the main plant in the instant case has some unusual features, the majority tribunal opinion *fails to specify any physical factors which distinguish it from numerous other buildings in the area used as warehouses." Safran, supra,* 382-383. (Emphasis supplied.)

In short, in *Safran* there was no "fair market" for the existing use, but in the instant case the "fair market" is the existing use.

A case factually similar to the instant case is *Minnesota v Federal Reserve Bank of Minneapolis,* 25 F Supp 14 (D Minn, 1938). The structure whose assessed value was in question was a 12-year-old building designed for use as a bank. The architecture was unique and distinctive and the building was well-located in the heart of the financial district of the city. The bank produced four appraisers who ignored the present use of the building as a bank, assumed that it was vacant and estimated the annual rental that might be obtained and then capitalized the annual rental to arrive at fair market value. Thus, using the income approach, they arrived at a fair market value of between $575,000 and $750,000. The

state's experts appraised the property by using reproduction cost less depreciation. Using this method they arrived at a fair market value between $1.7 and $1.9 million. In holding that the property was not unlawfully or inequitably assessed, the court said:

"In attempting to set aside the assessor's valuation, defendant relies solely upon a valuation computed by the capitalization of estimated income. No consideration is given to the other factors which may bear upon the market value. The building when erected was not primarily constructed to return income as such. It is a single purpose building, and many of its features which may detract from its usefulness as an income producing building may materially enhance its value for the purpose for which it was built, and which purpose and use will probably continue for years to come. Demand for the use is only one factor. To rely entirely on the capitalization of income under these circumstances in determining the market value neglects considerations that are vital. If plaintiff's figures were adopted, there would result a discrimination and a relative injustice in tax valuation that could not be supported and which would run counter to Chapter 237, Laws 1935. Defendant cannot escape its just share of the tax burden by erecting a building which is fairly adequate for its needs and which is devoted and intended to be devoted for its particular purpose for many years in the future, and then contend that, because it is only adapted for its requirements as a semipublic institution, it has no market value except as reflected in the capitalization of income for a use which is nonexistent and which was never intended." *Id.,* 19.

In summary, we find that unwavering adherence to the "cost on the open market" approach would consistently undervalue those buildings which are especially suited to a particular use, are not obsolete, and are being used for the particular use for which the building was designed or altered.

Because the subject property in the instant case is such a building, the Tax Tribunal did not commit an error of law or adopt a wrong principle in sustaining the assessment as made by respondent city.

Affirmed, no costs, a public question being involved.