CLARK EQUIPMENT COMPANY v TOWNSHIP OF LEONI

Docket No. 53488. Submitted November 5, 1981, at Lansing.—Decided March 3, 1982.

Clark Equipment Company petitioned the Tax Tribunal for a review of its property tax assessments for the years 1978 and 1979. Respondent was the Township of Leoni. Petitioner contended that the value of the property, a large industrial facility, should be determined by a market approach, while respondent contended that a replacement cost minus depreciation analysis was the proper method of determining the true cash value of the property. The tribunal adopted the cost minus depreciation analysis but used a depreciation factor different from that used by the township's assessor. The resulting true cash value found by the tribunal was higher than those found by both the petitioner and the respondent. Petitioner appeals. *Held:*

1. Use of the cost minus depreciation analysis, which relied upon a value based upon the current use of the property, was not improper in this case, where the parties agreed that the present use is the highest and best use for the property. Such a "value in use" analysis, while not consistent with the law, does not require reversal because of the parties' agreement that the property, if sold, could continue to be used in a manner consistent with its present use.

2. Because large industrial facilities such as that involved herein are not often bought and sold, valuation based on the market approach is difficult. To the extent that such a facility is suited for its current use and would be considered for purchase by a hypothetical buyer who wanted to own an industrial facility which could operate in accordance with the subject property's capabilities, the facility should be valued as if there were such a potential buyer even if, in fact, no such buyer, and therefore no such market, actually exists.

3. The Tax Tribunal's determination of an actual value in

REFERENCES FOR POINTS IN HEADNOTES

[1] 72 Am Jur 2d, State and Local Taxation § 787.

[2, 3, 5-7] 72 Am Jur 2d, State and Local Taxation § 759.

[4] 5 Am Jur 2d, Appeal and Error § 760.

excess of that claimed by either party is not per se objectionable. The tribunal has the duty to determine the true cash value and is free to reject the values claimed by the parties. In this case, however, the depreciation figure used by the tribunal was adopted without any evidence introduced to support it. The case should be remanded to allow the parties to present additional evidence on the issue of the proper depreciation figure to be used.

Affirmed in part and remanded.

1. APPEAL — TAXATION — TAX TRIBUNAL — CONSTITUTIONAL LAW.

The Court of Appeals, in reviewing a decision of the Tax Tribunal, is limited to a review of whether the tribunal committed an error of law or adopted a wrong principle (Const 1963, art 6, § 28).

2. TAXATION — TRUE CASH VALUE.

The three accepted methods for determining true cash value of real property for taxation purposes are: market analysis using the selling prices of comparable properties, cost analysis using reproduction cost less depreciation, and income analysis using the capitalization of income approach; it is the duty of the Tax Tribunal to select the method which is the most accurate for the property in question after considering all the facts before it.

3. TAXATION — EXISTING USE OF PROPERTY.

The existing use of real property may be indicative of the use to which a potential buyer would put the property and is, therefore, relevant to the fair market value of the property.

4. TAXATION — TAX TRIBUNAL — MISSTATEMENT OF LAW.

A decision of the Tax Tribunal need not be reversed despite the tribunal's misstatement of the law where the misstatement of the law was in a portion of the tribunal's opinion which is mere dictum.

5. TAXATION — INDUSTRIAL FACILITIES — TRUE CASH VALUE.

A large industrial facility which is suited for its current use and would be considered for purchase by a hypothetical buyer who wanted to own an industrial facility which could operate in accordance with the subject property's capabilities should be valued for taxation purposes as if there were such a potential buyer even if, in fact, no such buyer, and therefore no such market, actually exists.

6. TAXATION — TRUE CASH VALUE — TAX TRIBUNAL.

It is the duty of the Tax Tribunal to ascertain the true cash value

of a property when a dispute over the valuation comes before the tribunal, and where neither party's valuation figure is accurate the tribunal should be free to reject both.

7. TAXATION — TRUE CASH VALUE — BURDEN OF PROOF — STATUTES.

The petitioner in a matter brought before the Tax Tribunal has the burden of proving the true cash value of the property which is the subject of the dispute (MCL 205.737[3]; MSA 7.650[37][3]).

*Honigman, Miller, Schwartz & Cohn* (by *Charles H. Tobias* and *Michael B. Shapiro*), for petitioner.

*Parker, Adams & Mazur, P.C.,* for respondent.

Before: BRONSON, P.J., and T. M. BURNS and J. T. CORDEN,* JJ.

BRONSON, P.J. Petitioner appeals as of right from the Tax Tribunal's determination of the value of its four parcels of real property located in Leoni Township, County of Jackson. The parcels of land are the site of a heavy industrial plant owned by petitioner. The four parcels were valued as a single entity and will be treated as such for purposes of this appeal. This appeal concerns the assessments of the subject realty and industrial plant for the years of 1978 and 1979. The Tax Tribunal found the true cash value of the property to be $8,487,766 for 1978 and $8,934,490 for 1979.

Petitioner's appraiser offered only a market approach to valuation of the subject property. Under petitioner's market analysis, the true cash value for each year was determined to be $5,000,000. The Tax Tribunal rejected petitioner's market analysis, finding that the properties used by petitioner's appraiser were not really comparable to the subject property. In reaching its valuation

---

* Circuit judge, sitting on the Court of Appeals by assignment.

conclusions, the tribunal agreed with respondent's appraiser that a replacement cost minus depreciation analysis was most likely to result in an accurate true cash value determination for the property. This holding by the tribunal is the subject of petitioner's first assignment of error.

The Tax Tribunal found "that the best and most appropriate method of appraising an owner-occupied, on-going use industrial facility wherein the present use represents the highest and best use of the property FOR ASSESSMENT PURPOSES is to calculate its replacement (as distinct from reproduction) cost, allow for physical, functional and economic obsolescence (or depreciation) and add the land value to the appraisal". Petitioner objects to this "value in use" approach as having no relationship to the usual selling price, which is the statutory touchstone for determining the cash value of a property. MCL 211.27; MSA 7.27. Petitioner contends that the Tax Tribunal's decision improperly substitutes the hypothetical standard of "value in use" for the correct standard of "true cash value" as represented by "fair market value". As such, petitioner's claim is best characterized as an assertion that the tribunal adopted a wrong appraisal principle. This presents a legal issue which we are constitutionally empowered to review. Const 1963, art 6, § 28, *Northwood Apartments v Royal Oak,* 98 Mich App 721, 724; 296 NW2d 639 (1980).

There are three accepted methods for determining true cash value: market analysis using the selling prices of comparable properties, cost analysis using reproduction costs less depreciation, and income analysis using the capitalization of income appraoch. *Wolverine Tower Associates v Ann Arbor,* 96 Mich App 780, 781; 293 NW2d 669 (1980). It is the duty of the Tax Tribunal to select the

method which is the most accurate after considering all the facts before it. *Ramblewood Associates v City of Wyoming,* 82 Mich App 342, 345-347; 266 NW2d 817 (1978).

· Petitioner relies on *Safran Printing Co v Detroit,* 88 Mich App 376; 276 NW2d 602 (1979), *lv den* 411 Mich 880 (1981), for its contention that a market approach should have been used instead of the cost analysis adopted by the Tax Tribunal. However, *Safran* was decided on its particular facts and does not control the instant case. In *Safran,* the Tax Tribunal insisted on reaching a valuation determination on a "value in use" basis where both the petitioner's and respondent's appraisers agreed that the subject plant was obsolete, inefficient, and could not be sold as a printing plant, its current use. Moreover, the tribunal specifically held that a true cash value based on an analysis of usual selling price was a mere guide, and not the statutorily imposed standard for determining the fair market value of a property. The *Safran* holding is easily summarized as follows: a particular property cannot be valued by reference to its current use where all evidence shows that, due to the property's inefficiency and obsolescence, no buyer would consider purchasing the property with the purpose of utilizing it in conformity with its present use.

In this case, we are confronted with a factual scenario quite different than that posed by *Safran.* Unlike the situation in *Safran,* all the appraisers in this case agreed that the subject property's current use is also its highest and best use. Indeed, petitioner's appraiser's market analysis report includes the following statement:

"The subject property was originally designed as a manufacturing plant and has been used for this purpose

continuously since its conception. Although it has several obsolete design features, it is still modern enough to be considered for continued use for an industrial purpose. Moreover, it is currently occupied and used as an industrial plant and its owner-occupant has expressed no desire to abandon the property even though recent adjustments have been made in employee levels and product lines. Based upon the consistency of use exhibited by the above factors, the subject's highest and best use was estimated to be consistent with its current use as a manufacturing plant."

Contrary to petitioner's apparent contention, the Court in *Safran* did not hold that a cost analysis based on value in use could never be used to determine usual selling price. The *Safran* Court specifically noted that "existing use may be indicative of the use to which a potential buyer would put the property and is, therefore, relevant to the fair market value of the property". *Id.,* 382. See also *First Federal Savings & Loan Ass'n of Flint v City of Flint,* 104 Mich App 609, 617-618; 305 NW2d 553 (1981), which analyzes *Safran* and concludes, on grounds very similar to those we adopt, that *Safran* is not controlling.

We agree with petitioner, however, that the following excerpt from the Tax Tribunal's opinion flies in the face of *Safran* and is a misstatement of an applicable legal principle:

"Above all else, it [cost analysis based upon highest and best use] will get away from this fictional nonsense that an existing functioning industrial manufacturing or processing facility is so 'outmoded' that its current use should be ignored and it should be valued on the speculative basis of what it would be worth if its current use were abandoned and if it were put up for sale on the 'market' and ended up in a secondary use (which for some mysterious reason seldom rises above a nominal 'warehouse usage', or at least so it seems in

most of such similar appeals of similar facilities that are heard by this tribunal.) Indeed, rather than engage in the fiction of ignoring the current usage by the current owner altogether, as this sort of speculation requires, then why not approach the problem in a more reasonable manner by means of a 'value in use' appraisal as though the property were to be continued in its present use or alternatively if sold that it might well be sold as a part of a going concern, where its tailor-made construction and fixtures will continue to fulfill their present use and efficiencies."

Despite this incorrect statement of the law, we need not reverse. The quoted excerpt was mere dictum in this case since, as noted previously, all the appraisers agreed the subject property could still be used for manufacturing purposes. Had this case involved facts like those in *Safran,* reversal would have been required, and, had this case involved a factual dispute over whether the subject property was too outmoded to be sold for use consistent with its present use, the matter would have had to be remanded for specific factual findings on this disputed issue.

The problem with valuing large industrial plants is a problem with the statutory standard itself. The reality is that these types of industrial plants are rarely bought and sold, so that a determination of "usual selling price" constitutes a metaphysical exercise which puts the Tax Tribunal in the position of having to resolve a question somewhat akin to how many angels can dance on the head of a pin. Petitioner may well be correct in its assertion that there is no market for its industrial plant at its current use. However, as we construe MCL 211.27; MSA 7.27, to the extent that an industrial plant is not so obsolete that, if a potential buyer did exist who was searching for an industrial property to perform the functions cur-

rently performed in the subject plant, said buyer would consider purchasing the subject property, the usual selling price can be based upon value in use. To apply MCL 211.27; MSA 7.27, a hypothetical buyer must be posited, although, in actuality, such a buyer may not exist. To construe MCL 211.27; MSA 7.27 as requiring the taxing unit to prove an *actual* market for a property's existing use would lead to absurd undervaluations. Large industrial plants are constructed to order, in accordance with the exact specifications of the purchasing user. Such plants are not constructed like small commercial buildings or residential structures with only a mere hope or expectation on the builder's part that the plant will be sold. When a large corporate entity such as Ford or General Motors builds a factory, it is probable that absolutely no market exists for the resale of that factory consistent with its current use. It is ludicrous to conclude, however, that such a brand new, modern, industrial facility is worth significantly less than represented by its replacement cost premised on value in use because, in actuality, such industrial facilities are rarely bought and sold. Thus, we hold that, to the extent a large industrial facility is suited for its current use and would be considered for purchase by a hypothetical buyer who wanted to own an industrial facility which could operate in accordance with the subject property's capabilities, said facility must be valued as if there were such a potential buyer, even if, in fact, no such buyer (and therefore no such market) actually exists. This is in accordance with *First Federal Savings, supra,* 619-620, wherein the Court states:

"In summary, we find that unwavering adherence to the 'cost on the open market' approach would consis-

tently undervalue those buildings which are especially suited to a particular use, are not obsolete, and are being used for the particular use for which the building was designed or altered. Because the subject property in the instant case is such a building, the Tax Tribunal did not commit an error of law or adopt a wrong principle in sustaining the assessment as made by respondent city."

As was the case in *First Federal Savings,* the subject property here remains suited to its particular use and is not obsolete.

Petitioner's second claim of error is that the Tax Tribunal used a depreciation factor unsupported by the evidence and, consequently, its cost analysis resulted in a true cash value for the subject property far in excess of that which was advocated by the respondent's appraiser, namely, $7,932,452 for 1978 and $7,843,800 for 1979. The tribunal rejected respondent's depreciation factor of 52%, on the basis that it was overgenerous and in excess of that allowed industrial facilities of comparable age in the Marshall-Swift Valuation Manual. The tribunal allowed a depreciation factor of only 40%. In its opinion, it found that respondent's appraiser had not been in the subject plant for five years and was not in a position to make an informed judgment as to the amount of depreciation to be allowed.

We find nothing per se objectionable in the Tax Tribunal's determination that a particular property has a value in excess of that advanced by either party. It is the tribunal's duty to ascertain the true cash value of a property when a dispute over its valuation comes before it. If, due to methodological flaws in the parties' analyses, neither side's valuation figure is accurate, the tribunal should be free to reject both. Nonetheless, on the

facts of this case, we believe a remand for further proceedings is in order.

In the instant case, the Tax Tribunal reached its depreciation rate by adopting a figure from the Marshall-Swift Valuation Manual. However, this manual had not been introduced into evidence. The only expert testimony concerning the appropriate depreciation allowance was from respondent's appraiser, and his testimony supported a higher depreciation factor than that allowed by the tribunal. It is one thing for the tribunal to reject the respondent's proposed depreciation figure because its assessor lacked up-to-date knowledge of the subject facility. It is quite another matter to conclude that, because there exists reason to believe that respondent's depreciation figure is inaccurate, the tribunal should simply substitute some other figure equally lacking record support.

We recognize that the petitioner has the burden of proving true cash value, MCL 205.737(3); MSA 7.650(37)(3), and that, here, petitioner presented no evidence of an appropriate depreciation rate, relying solely on a market analysis to the valuation problem. In our opinion, however, all this constitutes is a concession that, if the respondent's cost analysis be adopted by the tribunal, petitioner does not claim error in the depreciation factor respondent's appraiser has found to be applicable.

In our opinion, in the relatively rare case in which the tribunal largely accepts the valuation approach advanced by the taxing unit, but also concludes that some portion of the unit's approach is not supported by competent evidence, resulting in a belief by the tribunal that the property should probably be valued in excess of the taxing unit's claim, the parties must be allowed to present further evidence on that portion of the case. To

hold to the contrary denies the adversely affected party an opportunity to know and possibly rebut the evidence which the tribunal will rely on in reaching its decision. Compare, *CAF Investment Co v State Tax Comm,* 392 Mich 442, 456-457; 221 NW2d 588 (1974).

Affirmed in part and remanded to the Tax Tribunal to allow the parties to present additional evidence on the issue of the proper depreciation factor to be applied to the subject property. We do not retain jurisdiction.