*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MENARD, INC.,

Petitioner-Appellee,

v

CITY OF ESCANABA,

Respondent-Appellant.

UNPUBLISHED
February 10, 2022

No. 354900
Tax Tribunal
LC No. 14-001918-TT

Before: GLEICHER, C.J., and SERVITTO and LETICA, JJ.

PER CURIAM.

Respondent, City of Escanaba, appeals by right the Tax Tribunal's judgment finding the true cash value of the property of petitioner, Menard, Inc., for tax years 2012, 2013, and 2014. Following a remand by this Court to determine the true cash value of the property, the Tax Tribunal found that the true cash value of petitioner's property was $5,000,000 for each tax year. We affirm.

## I. FACTUAL BACKGROUND

Petitioner's property is a 166,196-square-foot "big box" store in Escanaba, Michigan. *Menard, Inc v Escanaba*, 315 Mich App 512, 514; 891 NW2d 1 (2016). Petitioner challenged its property tax assessments for 2012, 2013, and 2014. *Id*. In the previous proceedings before the Tax Tribunal, petitioner's appraiser, Joseph Torzewski, used sale-comparison and income approaches to valuation, comparing the property to eight properties located primarily in southeastern Michigan. *Id*. at 514-515. Torzewski testified that most of the comparable properties had deed restrictions, but he did not make any adjustments for the restrictions because he opined that they would not affect a sales price. *Id*. at 516-517.

Respondent's appraiser and an expert in appraisal review also criticized Torzewski for failing to make adjustments for the comparable properties' use restrictions. *Id*. at 518. Respondent argued that the proper valuation method was the cost-less-depreciation approach, and that the method should not compare properties without deed restrictions to petitioner's property. *Id*. Torzewski testified that he did not use the cost-less-depreciation approach because functional

-1-

obsolescence was already built into big-box-store valuations and accounting for obsolescence would be unnecessary and difficult. *Id*. at 518-519.

The Tax Tribunal declined to consider the cost-less-depreciation approach to value because functional obsolescence was difficult to calculate and because first-generation users were not concerned about optimizing the property's market value. *Id*. It determined that the sales-comparison approach was the most persuasive approach, and found that deed restrictions had no effect on the sales price of comparable sales. *Id*.

On appeal, this Court stated that the parties did not dispute that the property's highest and best use was "as an owner-occupied freestanding retail building." *Id*. at 522-523. The parties instead disputed what valuation method should be employed to determine the property's value. *Id*. at 523. Considering Torzewski's sales-comparison approach, this Court noted that petitioner owned a fee-simple interest in the property, and its ownership was not subject to use restrictions. *Id*. at 523. However, Torzewski had not adjusted for the existence of deed restrictions. *Id*. at 524.

This Court held that the Tax Tribunal erred as a matter of law by failing to consider the effect of deed restrictions on the property's true cash value, and held that its finding was not supported by competent, material, and substantial evidence when it accepted Torzewski's flawed opinion. *Id*. This Court summarized, "In other words, the market sale was limited to the purchasers who were willing to accept the restrictions and so did not reflect the full value of the unrestricted fee simple." *Id*. at 525. Potential buyers were limited only to those buyers who would accept the use restrictions, and the deed-restricted comparables could not be sold for their highest and best use as a freestanding retail center. *Id*. at 525. However, the record did not contain evidence to account for the effect of deed restrictions and it was "plain that no adjustments were taken for this major difference in the subject property and the restricted comparables." *Id*. at 525-526. Accordingly, this Court opined that half of Torzewski's comparable sales were not evaluated at the property's highest and best use because petitioner's property was not subject to use restrictions but Torzewski's comparable sales did not account for use restrictions. *Id*. at 526.

This Court then considered the cost-less-depreciation approach to valuation. *Id*. This Court opined that it was proper to consider the cost-less-depreciation approach because deed restrictions imposed by other big-box store owners "drastically limited the actual market for such properties . . . ." *Id*. The cost-less-depreciation approach was appropriate in petitioner's case because there were few comparable properties without anticompetitive deed restrictions. *Id*.

This Court noted that we previously described the difficulty in determining the true cash value for property whose current use was its highest and best use (HBU) in *Clark Equip Co v Leoni Twp*, 113 Mich App 778, 782-783; 318 NW2d 586 (1982). This Court summarized the case as follows:

> . . . *Clark* provides that (1) when the HBU of the property is its existing use and (2) when, because the property was built-to-suit, there would be little to no secondary market for the property to be used at its HBU, then the strict application of the sales-comparison approach would undervalue the property, so the cost-less-depreciation approach is more appropriate. [*Menard, Inc*, 315 Mich App at 528.]

This Court opined that petitioner's case was governed by *Clark* because big-box stores are not typically sold in the marketplace for use as big-box stores, but there was no indication that big-box stores were not being built. *Id*. at 528-529. Because multiple valuation methods should be used when possible, the Tax Tribunal erred by refusing to consider the cost-less-depreciation approach. *Id*. at 529. We opined that there was no record evidence that petitioner's property was unable to function as an owner-occupied freestanding retail building. *Id*. at 531.

This Court reversed on the basis that the trial court failed to consider the cost-less-depreciation approach and considered only the sales-comparison approach. *Id*. at 531-532. Additionally, this Court held that there was insufficient record evidence to support its findings because it failed to account for the effect of deed restrictions on comparable sales. *Id*. at 532. This Court ordered that,

> on remand, the tribunal shall take additional evidence with regard to the market effect of the deed restrictions. If the data is insufficient to reliably adjust the value of the comparable properties if sold for the subject property's HBU, then the comparables should not be used. The tribunal shall also allow the parties to submit additional evidence regarding the cost-less-depreciation approach. [*Id*.]

Following this Court's remand, a hearing was held, at which the parties' experts summarized the cost-less-depreciation approach to value. As previously indicated, the tribunal ultimately determined that the true cash value of petitioner's property was $5,000,000 for each of the 2012, 2013, and 2014 tax years. This appeal followed, wherein respondent asserts that the tribunal reached a valuation conclusion on remand contrary to this Court's remand order in violation of the law of the case doctrine and additionally, that its valuation was flawed.

## II. STANDARDS OF REVIEW

This Court's review of a decision by the Tax Tribunal is limited. *Mich Props, LLC v Meridian Twp*, 491 Mich 518, 527; 817 NW2d 548 (2012). When a party does not dispute the factual findings or allege fraud, this Court reviews whether the tribunal "made an error of law or adopted a wrong principle." *Id*. at 527-528. This Court reviews de novo the interpretation and application of tax statutes. *Id*. at 528.

The Court must accept the Tax Tribunal's factual findings if "competent, material, and substantial evidence on the record" supports them. Const 1963, art 6, § 28. Substantial evidence supports the Tax Tribunal's findings if a reasonable person would accept the evidence as sufficient to support the conclusion. *Menard, Inc,* 315 Mich App at 520. Substantial evidence "may be substantially less than a preponderance of the evidence." *Id*. (quotation marks and citation omitted). The entire record of evidence must be considered, not merely the evidence supporting the tribunal's findings, and "cursory rejection of evidence is also erroneous." *Id*.

This Court reviews de novo whether the law-of-the-case doctrine applies to a case before this Court. *Manske v Dep't of Treasury*, 282 Mich App 464, 467; 766 NW2d 300 (2009).

## III.    LAW OF THE CASE

Respondent first argues that the tribunal's judgment failed to comply with this Court's prior remand in several respects. We disagree.

The law-of-the-case doctrine provides that, if this Court has ruled on a particular issue, it will not decide an issue differently on remand or during a subsequent appeal in the same case. *Manske*, 282 Mich App at 467. "The primary purpose of the doctrine is to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *Lenawee Co v Wagley*, 301 Mich App 134, 150; 836 NW2d 193 (2013).

First, respondent argues that the Tax Tribunal erred as a matter of law by failing to follow *Clark Equip Co*, 113 Mich App 778, on which this Court relied in its prior opinion remanding the case. In the parties' previous appeal, respondent supported its assessment with an expert report by Diana Norden, which provided a cost-less-depreciation approach to value. *Menard, Inc,* 315 Mich App at 517-518. In summarizing the tribunal's holding, this Court stated that "[t]he tribunal also credited Menard's assertion that the cost-less-depreciation approach should not be used because (1) functional obsolescence is difficult to calculate and (2) first-generation users are concerned with optimizing sales, not with optimizing market value to the property." *Id*. at 519. This Court relied on *Clark* when stating that the tribunal should not have rejected the cost-less-depreciation approach because the market was drastically limited. *Menard, Inc,* 315 Mich App at 526. After discussing *Clark*, this Court summarized: "In other words, *Clark* provides that (1) when the HBU of the property is its existing use and (2) when, because the property was built-to-suit, there would be little to no secondary market for the property to be used at its HBU, then the strict application of the sales-comparison approach would undervalue the property, so the cost-less-depreciation approach is more appropriate." *Id*. at 528.

This Court ruled that "the tribunal committed error by refusing to consider Escanaba's evidence under the cost-less-depreciation approach." *Id*. at 529. This Court stated that petitioner's property was "capable of fully functioning as a freestanding retail center just as the industrial center in *Clark* was modern enough for continued use of the industrial purpose for which it was designed." *Id*. When ordering remand, this Court stated: "The tribunal shall also allow the parties to submit additional evidence regarding the cost-less-depreciation approach." *Id*. at 532. Contrary to any suggestion otherwise, this Court did not require the tribunal to apply a value-in-use standard.

In its judgment, the tribunal found it instructive to discuss the difference between value-in-use and value-in-exchange. It noted that *Clark* had relied on overruled caselaw to the extent that it discussed value-in-use. Nothing about the tribunal's discussion was contrary to this Court's opinion because this Court did not require the tribunal to value the property under value-in-use principles. The tribunal accepted evidence under a cost-less-depreciation approach to value and ultimately based its decision on it. Accordingly, the tribunal's discussions of the shortfalls of *Clark* did not result in the tribunal violating the law of the case. The tribunal complied with this Court's remand order by applying the cost-less-depreciation approach when determining the property's true cash value (regardless of the tribunal's opinion about the continued validity of the value-in-use doctrine expressed in *Clark*).

Second, respondent argues that the Tax Tribunal erred by finding that deed restrictions had no effect on the fair market value of comparable properties and that this finding conflicted with

this Court's previous decision. Respondent's argument, however, fails to address the basis of the tribunal's decision.

This Court need not consider an argument that fails to address the basis of the lower court's decision. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004). Further, this Court will not reverse or vacate an order unless refusing to do so appears to this Court to be inconsistent with substantial justice. MCR 2.613(A). The trial court's error is harmless if it is not decisive to the outcome in a case. See *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 529; 730 NW2d 481 (2007).

This Court previously held that competent, material, and substantial evidence did not support the Tax Tribunal's findings regarding the true cash value of petitioner's property because there was insufficient record evidence regarding the effect of deed restrictions on comparable sales. *Menard, Inc*, 315 Mich App at 532. This Court ordered that the tribunal consider the effect of the deed restrictions on remand, and not to use comparable sales if it was not able to reliably adjust the comparable properties. *Id*.

Following remand, the tribunal opined that the weight of the evidence suggested that deed restrictions had a neutral market value, and that a market analysis provided following remand showed that deed-restricted properties sold for 12% more than unrestricted properties. However, the tribunal ultimately determined that "reliable data to adjust the value of the comparables if sold for the subject property's [highest and best use] was not provided."

The tribunal complied with this Court's instruction by accepting additional evidence regarding the effect of deed restrictions on comparable sales. It ultimately determined that it could not reliably adjust the value of comparable sales, which was an outcome this Court specifically contemplated. Additionally, because the tribunal did not rely on deed-restricted comparable sales, any error in its findings did not affect the outcome of this case.

Third, respondent argues that the tribunal erred by misinterpreting the property's highest and best use, asserting that this Court's conclusion that the property's highest and best use was as an owner-occupied freestanding retail building precluded the tribunal from determining that a purchaser would need to make substantial modifications to the building (therefore undermining the basis for the tribunal's functional-obsolescence decision). We disagree that the tribunal's decision conflicted with this Court's prior decision.

This Court previously determined that the parties did not dispute that the property's highest and best use was "as an owner-occupied freestanding retail building." *Menard, Inc*, 315 Mich App at 522-523. This Court required the tribunal to value the property as if its current highest and best use was its existing use. *Id*. at 528. This Court then continued to refer to big-box stores generally. See *id*. at 528-529.

In this case, the Tax Tribunal rejected that the property's highest and best use was as a freestanding *home-improvement* store. Regardless, it found it unlikely that another home-improvement store would move onto the property without a tear-down or modification to the property. The tribunal found that the property's highest and best use "is owner-occupied freestanding retail, and a ready market for former owner-occupied, freestanding big-box stores,

exists." This finding was consistent with this Court's determination of the property's highest and best use.

## IV. OBSOLESCENCE

The next issue on appeal primarily involves the determination of the amount of obsolescence of petitioner's property. The cost-less-depreciation approach requires the appraiser to determine the cost of the property, depreciate it, and then determine how much obsolescence the property has. *Co of Wayne v Michigan State Tax Com'n*, 261 Mich App 174, 208; 682 NW2d 100 (2004). Obsolescence reflects the reduced cost a purchaser may pay on the basis of whether the property is less useful to the purchaser, and may be functional (within the property) or external (outside the property). *Forest Hills Co-operative v City of Ann Arbor*, 305 Mich App 572, 591; 854 NW2d 172 (2014). Respondent argues that the Tax Tribunal erred by accepting the obsolescence calculation of petitioner's expert, Lawrence Allen, under the cost-less-depreciation approach to value, on the basis that Allen's analysis was flawed in several respects.

Respondent bases its argument on the assertion that the property's highest and best use was as a home-improvement store, and therefore, a hypothetical buyer would not need to make substantial modifications (functional obsolescence) to the building. Further, the property was located in a good market (external obsolescence) for a home-improvement store. Respondent contends that Allen's valuation did not value the property at its highest and best use because he used noncomparable properties—i.e., big-box stores that were not home-improvement stores—in his market analysis.[1] As previously discussed, the tribunal's determination that the hypothetical pool of buyers were big-box stores, generally was consistent with this Court's prior decision. We also conclude that competent, material, and substantial evidence supported the tribunal's decision.

Allen testified that the property's highest and best use was continued use as a freestanding retail building. The highest and best use determined what comparables Allen would look for to compare to the subject property. Allen opined that the property had high obsolescence because a purchaser would most likely be required to make heavy modifications to petitioner's store in order for it to function for the purchaser's needs because big-box stores fit highly standardized brand models. For instance, Lowe's and Home Depot do not use outdoor lumber areas like the property has, and Meijer or Walmart would need to install refrigerators. Accordingly, functional obsolescence began immediately because big-box stores were built with a specific user in mind and not readily adaptable to other uses, and his data established that when a big-box store purchased another store's property, there were high conversion costs or the buildings were entirely

---

[1] To the extent that respondent quotes heavily from and relies on *The Appraisal of Real Estate, 14th Edition* (Chicago, IL: The Appraisal Institute, 2013), this document is not part of the lower court record. This document is not marked as "admitted," is not included respondent's admitted exhibits, and was not listed as an admitted document in the tribunal's judgment. A review of the transcript reflects that respondent offered this exhibit for admission but failed to follow up after the tribunal asked a question about it. We have only considered this source to the extent that the witnesses testified about it and that testimony was not contested. See *In re Rudell Estate*, 286 Mich App 391, 405; 780 NW2d 884 (2009); *Lamkin v Engram*, 295 Mich App 701, 703 n 2; 815 NW2d 793 (2012).

demolished and replaced. Allen also based his obsolescence determination on income capitalization rates (intended to show the reduction in value per square foot) on properties purchased in fee simple by the intended big-box user. He opined that it was not appropriate to base income-capitalization rates on properties subject to leases because the property was not actually subject to a lease, and because investors were willing to pay more for properties with leases in place.

Respondent's appraiser, William Miller, initially testified that he determined that the property's highest and best use was as "[a]n owner-occupied freestanding retail property." However, Miller subsequently stated that the highest and best use of the property was as a home-improvement store. Miller compared the property to other home-improvement stores, such as Home Depot and Lowe's, and testified that such stores had similar basic components and that the style of Menards, Home Depot, and Lowe's stores had been very consistent. He opined that the property had no obsolescence at all because there was demand for a home-improvement big-box store in the Escanaba area, the most likely purchaser of the store would be another home-improvement big-box store, and therefore, the purchaser would not have to make many modifications to petitioner's store in order for it to function. Miller's ultimate approach to the property deducted 2.4 to 2.2% for functional obsolescence, which was essentially for the cost of removing the mezzanine. Miller based his capitalization rate on sales that included instances in which the property was subject to a lease because the property would be purchased in fee simple, regardless of whether it was subject to a lease; the property was currently occupied; and a leased property would continue to be occupied rather than being vacant between purchasers.

The difference between the parties' analyses was whether the market analysis of functional obsolescence should include *all* big-box stores or *only* big-box *home-improvement* stores. Accordingly, the tribunal did not err by finding that another big-box store chain was a hypothetical purchaser for the property and would be required to make substantial modifications to the building. Further, we conclude that the tribunal's findings were supported by competent, material, and substantial evidence.

Allen described the property's atypical characteristics and provided examples of when big-box store purchasers—including home-improvement stores—had torn down recent buildings to replace with their own specific constructions. Allen used six specific sales in which stores were sold in fee simple for retail use to determine the residual value of undesired improvements. In contrast, Miller determined that only the mezzanine contributed to functional obsolescence. However, Miller based his decision in part on the fact that petitioner's property had a lumberyard and other features that were designed for a home-improvement store. He agreed that replacement costs would be higher if a store was changed from a home-improvement store to a grocery store. His opinion was based on the highest and best use being that of a home-improvement store.[2]

We conclude that a reasonable person would accept the evidence as sufficient to support the tribunal's conclusion that a buyer would be required to make extensive modifications to the

---

[2] Respondent attempted to provide evidence that modification costs to other stores were generally low, but respondent's expert admitted that the data on which he relied were flawed and testified that he could not stand by his report or testimony about the cost to convert big-box stores.

property, and therefore, the value of the property to a potential buyer was significantly less than the property's replacement costs.

Respondent next argues that there was no evidence of economic obsolescence because it was substantially likely that the property would be purchased by another home-improvement retailer, and the competition for home-improvement retailers in Escanaba was functionally nonexistent. Again, this opinion was based on treating the hypothetical purchaser of the property as a home-improvement store. Regardless, external obsolescence was not the basis of the tribunal's decision.

In this case, the tribunal found that the property's highest and best use "is owner-occupied freestanding retail, and a ready market for former owner-occupied, freestanding big-box stores, exists." The tribunal ultimately determined that the property had a significant amount of obsolescence because a buyer would not purchase it without making significant modifications and retrofitting the property. Considering the tribunal's decision in context, the tribunal's obsolescence calculations were based on functional obsolescence (i.e., the costs of a buyer to retrofit or replace the building) rather than external obsolescence (i.e., the external market demand for the property). Even were this Court to accept respondent's argument that there was no evidence of external obsolescence, it would not provide a basis for reversing the tribunal's decision.

Respondent also argues that the tribunal erred by considering vacant "dark stores," because the sales of vacant and available stores were part of Allen's comparable properties in the cost-less-depreciation approach to value. Respondent argues that the tribunal should only have considered "occupied" properties when determining obsolescence and describes the significance of this mistaken reliance as the tribunal improperly determining that the property did not suffer from external obsolescence. Amici also argue that a property does not need to be vacant to be considered for obsolescence purposes, and that external obsolescence should not lead to a lower true cash value.[3]

The party seeking reversal on appeal has the burden to provide the court with a record that establishes the factual basis of an argument. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). As previously discussed, the tribunal did not base its decision on the external obsolescence of the property. To the contrary, it found that there was a market for owner-occupied big-box stores, and it based its obsolescence determination on functional obsolescence related to the modifications a property purchaser would be required to make, which in turn results in the buyer not paying for those aspects of the property it did not need. Additionally, the tribunal addressed respondent's "dark store theory" and determined that, "if a property is vacant, really old or converted to another use, it should not be chosen as a comparable because it is not in the same condition as the subject, unless it can be adjusted to reflect the characteristics of the subject property, including conditions of sale." Again, respondent argues that dark-store reliance affected the tribunal's decision about external obsolescence, which was not the basis of the tribunal's

---

[3] To the extent that amici argue that the Tax Tribunal should not have considered an income approach to value and should not have considered second-generation leases, this argument has no merit. The tribunal found that the parties stipulated that the property did not produce income, and so an income approach should not be given weight.

decision, and the tribunal expressly rejected that vacant properties could be used as comparable properties. Respondent has not established that the tribunal erred by relying on "dark store" comparables or that any reliance affected the outcome of the tribunal's decision.

## V. FEE-SIMPLE AND LEASED-FEE INTERESTS

Respondent argues that the Tax Tribunal erred by excluding sales of properties on which there was an existing tenant as "leased fee" sales because those sales were "fee simple" sales. This argument is not consistent with valuing the property as owner-occupied property.

In the parties' prior appeal, this Court stated as follows when discussing prior, unpublished decisions of this Court:

> . . . [T]he salient issue was whether, using the sales-comparison approach, comparables should be to the fee simple alone or the fee simple plus the value to an occupier of an already existing leasehold or operating business. We determined in both cases, over the objection of the taxing authority, that *because the subject property was owner occupied, it must be valued as if vacant and available*. . . . In other words, those cases held, as do we, that what must be valued is what would actually be sold. In those cases, the sales would be of the property without an existing lessee or operating retail business. In this case, what is being valued is the property without deed restrictions limiting its use. [*Menard, Inc*, 315 Mich App at 526 n 5 (emphasis added).]

Instead, "the subject property would be considered by a hypothetical buyer who wished to own a freestanding retail building in accordance with the subject property's capabilities . . . ." *Id*. at 530.

As this Court previously stated, what must be valued is what would actually be sold. We conclude that it is not necessary to attempt to untangle a dispute between two groups of real-estate appraisers regarding whether the definition of "fee simple" in an appraisal dictionary differs from the definition of "fee simple" related to estate law. Respondent's interpretation and data included the values of those stores that were subject to leases at the time they were sold. Had the tribunal relied on respondent's data, it would have valued petitioner's property as if it had a lease in place *when there is no such lease in place*. A hypothetical buyer would not be buying a property that was subject to a lease. For the same reason, the tribunal did not err by valuing the property as if it were vacant and available rather than subject to an existing lease.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Deborah A. Servitto
/s/ Anica Letica