CONGRESSHILLS APARTMENTS v YPSILANTI TOWNSHIP
(AFTER REMAND)

Docket No. 64670. Submitted April 21, 1983, at Detroit.—Decided
July 28, 1983.

Congresshills Apartments, a limited partnership owning a feder-
ally subsidized apartment complex, petitioned for review in the
Tax Tribunal of tax assessments by the Township of Ypsilanti
for 1977, 1978, and 1979. The Tax Tribunal denied any reduc-
tion in the assessments for 1977 and 1979 and increased the
assessment for 1978. Petitioner appealed to the Court of Ap-
peals. The Court of Appeals held that the Tax Tribunal had
erred as a matter of law in using hypothetical market rents
and incomes rather than the actual rents which were permitted
under the federal-subsidy program in its determination of the
true cash value of the apartment complex using the capitaliza-
tion of income method and remanded to the Tax Tribunal with
instructions to recalculate the true cash value for the years
1977 through 1979 using actual income and expenses. 102 Mich
App 668 (1981). On remand, the Tax Tribunal determined that
it would recompute the capitalization rates rather than using
the capitalization rates previously used, although neither party
had objected in the prior appeal to those prior capitalization
rates. While the Tax Tribunal invited briefs from the parties on
the question of capitalization rates, it refused petitioner's re-
quest for a hearing. The use of the new capitalization rates
6.24%, 6.1895%, and 6.201% for 1977, 1978, and 1979, respec-
tively, rather than the use of the prior capitalization rates
13.685%, 13.6345%, and 13.949%, respectively, when coupled
with the use of the actual rental rates rather than the hypo-
thetical market rental rates, resulted in tax assessments almost
identical to the previously calculated assessments. Petitioner
appeals. *Held:*

1. It is clear that the Tax Tribunal incorporated the federal

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 40 Am Jur 2d, Housing Laws and Urban Redevelopment §§ 27
28.

72 Am Jur 2d, State and Local Taxation §§ 761, 762.

[2] 72 Am Jur 2d, State and Local Taxation §§ 765, 767.

[3] 72 Am Jur 2d, State and Local Taxation §§ 782-787.

interest subsidy into its calculation of the value of the real estate. Such inclusion of the federal subsidy was erroneous in that the subsidy is an intangible asset or benefit which can not properly be subject to taxation as real property under the statute authorizing ad valorem taxation of real property. In treating the federal subsidy as a taxable element of value comparable to rental income of an unregulated commercial enterprise, the Tax Tribunal completely overlooked the governmental purpose of the subsidy, since the nature of the subsidy tends to create a situation in which the construction cost often exceeds the actual market value of any project so subsidized.

2. It was error for the Tax Tribunal to fail to afford a full hearing on the question of capitalization rates once it had determined to recompute those rates. The tribunal's invitation to the parties to submit briefs on the question of capitalization rates is not a constitutionally adequate alternative to a full hearing before the tribunal.

3. The absence of any objection by the respondent to the previously used capitalization rates acts as a waiver by the respondent of any right to object now to the use of the prior rates. Accordingly, the Court of Appeals, using the prior capitalization rates, determined the true cash values of petitioners' property for the years 1977, 1978, and 1979 to be $1,380,219, $1,871,048, and $1,390,946, respectively.

Reversed and remanded for computing the amount of tax liability.

1. TAXATION — AD VALOREM TAXES — TAX TRIBUNAL — CAPITALIZATION OF INCOME — GOVERNMENT SUBSIDIES.

It is an error of law for the Tax Tribunal to incorporate the value of a federal interest subsidy as a real estate value in its determination of the capitalization rate used in determining the true cash value of the subsidized property by the capitalization of income method; a federal interest subsidy is an intangible asset or benefit which is not properly subject to taxation as real or tangible property under the statute authorizing ad valorem taxation of real property (Const 1963, art 9, § 3; MCL 211.2; MSA 7.2).

2. TAXATION — GOVERNMENT SUBSIDIES — TRUE MARKET VALUE.

The value of property improvements which are built pursuant to a government subsidy tends to be overstated, since the construction cost of such property often exceeds the market value of the completed project; however, because ad valorem taxation of the property must reflect the actual market value, it is error

to treat the government subsidy as a taxable element of value comparable to rental income of an unregulated commercial enterprise, for to do so would result in disregarding the governmental purpose of the subsidy.

3. TAXATION — TAX TRIBUNAL — DUE PROCESS.

It is error for the Tax Tribunal to fail to afford a full evidentiary hearing on the question of the proper rate of capitalization to be used in determining true market value by the capitalization method where, after a remand from the Court of Appeals, the Tax Tribunal decides to redetermine the rate of capitalization; an invitation by the Tax Tribunal to the parties to submit briefs on the question of the rate of capitalization does not satisfy the procedural due process requirements of notice and opportunity to be heard and is not an adequate substitute for a full hearing.

*Hyman, Gurwin, Nachman, Friedman & Winkelman* (by *Thomas J. Beale),* for petitioner.

*Collins & McCormick* (by *Michael J. McCormick),* for respondent.

AFTER REMAND

Before: BRONSON, P.J., and MACKENZIE and J. H. GILLIS, JJ.

PER CURIAM. Petitioner taxpayer appeals from a decision of the Michigan Tax Tribunal, which was entered after reversal and remand by this Court, *Congresshills Apartments v Ypsilanti Twp,* 102 Mich App. 668; 302 NW2d 274 (1981). In the present appeal, as in *Congresshills, supra,* the issue before this Court is whether the Tax Tribunal properly computed the true cash value of petitioner's property for purposes of assessing taxes for the years 1977-1979. Once more, we reverse the Tax Tribunal's computation of true cash value.

At the original hearing, before the remand in

*Congresshills, supra,* the tribunal agreed with the parties that the proper method of determining true cash value was by capitalization of income. The tribunal adopted the capitalization rates advocated by petitioner, 13.68% for 1977; 13.6345% for 1978; and 13.9495% for 1979. None of these rates were the subject of any dispute in the appeal from those original proceedings, *Congresshills, supra.* The tribunal applied those rates to certain hypothetical market rental income figures advocated by the respondent township's appraiser. This Court reversed, finding that the tribunal committed an error of law in using hypothetical rental rates which petitioner could not legally obtain as a low-income subsidized project. *Congresshills, supra,* p 677. The Court remanded for the purpose of recalculating true cash value based upon actual rather than hypothetical rental income.

On remand, consistent with this Court's opinion in *Congresshills, supra,* the Tax Tribunal used actual income and expenses in arriving at its assessment of true cash value. The tribunal's aggregate net operating income figure for the period in question was 55% less than before this Court's order of remand. Nonetheless, its determination of true cash value on remand was almost identical to that which it made before remand. The tribunal reached this result by using drastically reduced capitalization rates, 6.24% for 1977; 6.1895% for 1978; and 6.201% for 1979. For reasons both substantive and procedural, we believe that the tribunal's use of these reduced capitalization rates was erroneous as a matter of law.

First, we believe that the use of the reduced capitalization rates was substantively erroneous, in that those rates impermissibly incorporate the value of the federal interest subsidy as a real

estate value. Although the tribunal's opinion did not state that its purpose was to tax this interest subsidy, there can be little doubt that this was the tribunal's intention. At least one of the tribunal judges stated on the record that "this tribunal * * * is * * * of the opinion that somehow the subsidy figures into the value of [the] parcel". However, the interest subsidy is an intangible asset or benefit which cannot properly be subject to taxation as "real" or "tangible" property under Const 1963, art 9, § 3. The statute authorizing ad valorem taxation of "real property", MCL 211.2; MSA 7.2, defines such property narrowly to include only "lands within the state, and all buildings and fixtures thereon, and appurtenances thereto" and contains no language which would permit taxation of an intangible benefit or asset such as an interest subsidy. Compare also the definition of "tangible property" contained in Black's Law Dictionary (4th ed), p 1267, defining such property as being "necessarily corporeal" in nature. To define an interest subsidy as a tangible asset or real property subject to taxation would be to extend Michigan's property tax laws by implication, a practice condemned in *Continental Motors Corp v Muskegon Twp,* 365 Mich 191; 112 NW2d 429 (1961); see also *General Motors Corp v Detroit,* 372 Mich 234; 126 NW2d 108 (1964).

Petitioner also demonstrates that the tribunal's method of deriving capitalization rates disregards the actual amount of the required debt service for petitioner's property, while erroneously projecting a positive return on petitioner's equity. Specifically, petitioner points out that the tribunal's capitalization rates are based upon an assumed return of six percent on the petitioner's equity of ten percent of the value of the project—a figure

based upon the maximum permissible return on equity for such projects under applicable federal regulations—rather than on petitioner's actual return. Petitioner goes on to point out that it has never experienced the distribution projected by the tribunal but that it has instead run a substantial annual deficit.[1] Petitioner notes the crucial factor underlying this disparity: the principal amount of the mortgage, $4,767,300, is clearly far greater than the market value of the development, a circumstance which is common in federally subsidized low-income housing developments. See *Community Development Co of Gardner v Board of Assessors of Gardner,* 377 Mass 351; 385 NE2d 1376 (1979), where the Court observed:

"The great dilemma in assessing federally assisted housing projects is that the 'value' of these projects is inherently ambiguous. Construction costs are known; but these overstate the market value of the project, since in the absence of subsidy the rental stream produced by the property would not justify the actual expenditure on construction." 385 NE2d 1378.

Accord, *First Federal Savings & Loan Ass'n v*

[1] By means of the following charts, derived in turn from affidavits, petitioner compares its actual experience for the year 1977 with that projected by the tribunal's methods:

|  | Actual Experience | Tribunal Projections |
|---|---|---|
| Annual Mortgage Payments (includes debt service on 8-1/2% mortgage minus interest subsidy) | $143,653 | $82,636 |
| Property Taxes | 88,085 | 88,085 |
| Distribution to Owner | (42,855) deficit | 18,162 |

In its responsive brief on appeal, respondent does not even suggest how the foregoing analysis may be faulty, and nothing in its arguments here or in the proceedings below demonstrate how the tribunal's figures, based on assumptions contrary to petitioner's actual experience, can be justified.

*Flint,* 415 Mich 702; 329 NW2d 755 (1982), where our own Supreme Court cited government-subsidized construction as an example of property with a taxable market value less than its cost:

"Governments * * * for reasons of policy * * * build * * * private housing in neighborhoods where private entrepreneurs will not build, which [projects] are worth less on the market than they cost to construct." 415 Mich 705, fn 4.

"If the government were to sell an overimprovement to a private person, market price rather than the cost of construction would govern for ad valorem tax purposes. If the government subsidizes a private enterprise in constructing such structures, the market value rather than cost would govern." 415 Mich 706, fn 5.

In the present case, petitioner's project is clearly one which falls within the category of those described by the Courts in *Community Development Co, supra,* and *First Federal Savings, supra.* Yet the Tax Tribunal's cash value determination on remand differs remarkably little from that which it reached in the original proceedings, when it expressly disregarded the project's governmental purpose and governmentally imposed rental income limitations. In short, by treating the interest subsidy as a taxable element of value comparable to the rental income of an unregulated commercial enterprise, the tribunal has completely overlooked the governmental purpose underlying petitioner's project and has in the process imposed a tax upon an intangible benefit, contrary to Const 1963, art 9, § 3.

Our conclusion in the present case is consistent with the result in *Community Development Co, supra.* In that case, the Court noted that it was improper for assessors to treat mortgage interest reduction payments as a subsidy in determining

gross income. The Court did not say whether interest reduction payments should influence the capitalization rate, but the fact remains that in that case an undisputed capitalization rate of 18.04% was applied by the assessors. 385 NE2d 1378, fn 8. This fact alone compels the conclusion that the tribunal erred in relying on the interest subsidy as a reason to reduce the previously established capitalization rates of 13.68%, 13.63%, and 13.49%. These original rates were already substantially lower than those applied to the comparable project in *Community Development Co, supra.* The reduced rates on remand, 6.24%, 6.1895%, and 6.201%, contrast so sharply with those in *Community Development Co*,[2] that we have little choice but to concur in petitioner's characterization of them as "absurdly low" and erroneous as a matter of law.

Even if this Court could, as a substantive matter, justify the tribunal's use of reduced capitalization rates on remand, we find merit in petitioner's alternative argument that the tribunal's disposition of the issue was procedurally improper. As noted above, the tribunal originally agreed with petitioner that the rates should be 13.685%, 13.6345%, and 13.9495% for the three tax years in question. These rates were not disputed in the first appeal to this Court, *Congresshills, supra.* As a

---

[2] Nothing in the record below nor in respondent's brief on appeal suggests how the project in *Community Development, supra,* might be distinguished from petitioner's in the present case. Certainly, neither respondent nor the tribunal has provided this Court with any explanation of circumstances which might justify the decision to use capitalization rates which differ so markedly from those found appropriate for the presumably comparable subsidized housing project in *Community Development, supra.* Cf. also *Kargman v Jacobs,* 411 A2d 1326 (RI, 1980); *Royal Gardens Co v City of Concord,* 144 NH 668; 328 A2d 123 (1974), where the courts approved capitalization rates of 16.4% and 16.96% for federally subsidized housing projects indistinguishable from the present one.

result, before the remand in *Congresshills, supra,* neither party had occasion to address the issue of capitalization rates. Since respondent's witnesses were all in substantial agreement with petitioner's proposed rates, there was no occasion to even cross-examine witnesses as to the issue, let alone to submit extensive argument either before or immediately after remand. Under the circumstances, it is apparent to this Court that petitioner had no notice whatsoever that capitalization rates would be an issue on remand.

When on remand the tribunal revealed its intention to recompute the rates so as to adversely affect petitioner, it flatly refused to afford petitioner an opportunity to be heard as to the issue. The tribunal denied petitioner's request for a *de novo* hearing on remand and, after announcing its finding of reduced rates, denied petitioner's motion for rehearing requesting an opportunity to present evidence which might "show * * * that the capitalization rates adopted by the tribunal [on remand] incorporate both errors of law and errors of fact".

In short, the foregoing reveals that the tribunal deprived petitioner of both of the essential elements of procedural due process as to the issue: (1) notice, and (2) an opportunity to be heard. See, *e.g., Pavilion Apartments, Inc v State Tax Comm,* 373 Mich 601; 130 NW2d 399 (1964). In the present case, as in *Pavilion Apartments, supra,* the taxing authority in reaching its decision relied upon certain "information", and followed a particular line of reasoning, which was not known to the taxpayer until the decision had been made and finalized. More importantly, in the present case, as in *Pavilion Apartments, supra,* the petitioner taxpayer was completely deprived of an opportunity

to conduct a hearing to challenge the findings which resulted from the tribunal's unexplained process of deliberation.

Respondent makes much of the fact that the tribunal invited the parties to file briefs on the issue of whether subsidy income should be used in arriving at a capitalization rate. We attach little significance to this gesture. The mere invitation to file a brief does not translate into an effective opportunity to be heard as to this particular issue. So long as the capitalization rates were essentially undisputed, as had been the case before remand, there was no need for either party to submit any evidence as to the issue. However, once the tribunal announced its decision to reduce the rates, certain questions of fact were raised which had never been addressed at all. The parties—and particularly the adversely affected party, petitioner—needed an opportunity to go beyond merely submitting additional argument, the function of a memorandum or brief.

The only effective "hearing" would have been one in which petitioner had an opportunity to challenge the factual assumptions underlying the tribunal's findings and, if necessary, to submit evidence of its own. Absent such an opportunity, any "hearing" afforded petitioner by the tribunal was at best incomplete.

Respondent also urges that one of petitioner's principals, Mr. Irving Seligman, waived all objection to the tribunal's method of calculating income and capitalization rates. In this regard, appellee places great emphasis on a single colloquy which took place between Seligman and one of the tribunal judges. We believe that respondent misplaces reliance on this colloquy and that there was no voluntary and knowing waiver of objection as to

the issue. The record reveals that Seligman was not familiar with all of the mathematical principles involved in the process of capitalization. It follows that any indication of agreement with the tribunal's methods was based on a misapprehension of the tribunal judges' remarks, rather than any fully enlightened or well-considered statement of petitioner's position. We also disagree with respondent's suggestion that petitioner could have intended this brief, spontaneous colloquy to serve as a substitute for its right to a full-scale evidentiary hearing as to the issue of capitalization rates. We find that respondent's claim of waiver strains credulity in light of the continued objections raised by Seligman and petitioner's other representatives to the tribunal's findings as to income, mortgage debt service, and capitalization rates and to the tribunal's determination of true cash value.

We also believe that the issue of waiver is far more damaging to respondent than it is to petitioner. This follows because, while Seligman's waiver of objection was at best uninformed and spontaneous in nature, respondent's own conduct regarding the issue of capitalization rates is remarkably consistent with the argument that respondent waived objection to the tribunal's original findings as to those rates. This follows from our observation that, even though respondent advocated rates somewhat different from those adopted by the tribunal in its original decision, it chose not to object to the tribunal's findings in that regard and submitted no cross-appeal challenging the original rates. Respondent's silence as to the tribunal's original choice of rates was hardly a fleeting and spontaneous manifestation of its acquiescence; respondent omitted for more than a year to raise any objection as to this issue while

the original appeal was pending in this Court. Furthermore, respondent's apparent acquiescence in the tribunal's original determination of rates can hardly be characterized as the result of a misunderstanding of the principles involved in deriving those rates. All of respondent's witnesses and representatives, including respondent's attorney, had an extended period of time to study the principles of capitalization and to enhance their comprehension of the issue. We conclude that it was respondent, rather than petitioner, who waived objections as to this issue.

At the very least petitioner should have had an opportunity to conduct an evidentiary hearing to challenge the tribunal's decision to reduce capitalization rates on remand. Although, under normal circumstances, an order directing the tribunal to hold such a hearing might have been sufficient to protect petitioner's due process rights, we believe that, under the circumstances of this case, any further order of remand would be a waste of time for all parties concerned.

We also note that there is no need to hold any hearing in order to establish a reasonable capitalization rate which would be acceptable to both parties. The rates established by the tribunal before this Court's first order of remand were those advocated by petitioner, and those rates of capitalization have never been disputed by respondent.[3] Given this fact, and given further that there is no demonstrable basis for the tribunal's finding of reduced rates or, for that matter, the use of any

---

[3] It is true that the original rates were not specifically "presented to and decided by this Court in prior appeal" and as such cannot fairly be characterized as the law of the case, cf. *CAF Investment Co v Saginaw Twp*, 410 Mich 428, 456; 302 NW2d 164 (1981). However, given respondent's apparent waiver of objection as to these rates, noted *supra*, we perceive no bar to their application here.

alternative schedule of rates, we hold that the proper capitalization rates are those determined by the tribunal prior to this Court's first order of remand: 13.685% for 1977; 13.6345% for 1978; 13.9495% for 1979. "True cash value" for petitioner's property must be computed using these rates. Rather than entering a second order of remand directing the tribunal to substitute these rates into its formula for determining "true cash value", we grant petitioner's request to enter our own order incorporating cash values based upon these rates.[4] This method of disposition is consistent with that used by the Supreme Court in *CAF Investment Co v Saginaw Twp,* 410 Mich 428; 302 NW2d 164 (1981).

"True cash values" for each of the tax years in question are therefore determined to be as follows:

| 1977: | $1,380,219 |
| 1978: | $1,871,048 |
| 1979: | $1,390,946 |

The order of the Tax Tribunal establishing different cash values must be reversed, and the matter remanded for the sole purpose of computing the amount of petitioner's tax liability based upon the foregoing cash values. The tribunal shall enter its order computing petitioner's tax liability within 30 days of the issuance of this opinion.

Reversed.

---

[4] We adopt petitioner's proposed process for calculating true cash value (column 3) based upon the tribunal's post-remand determination of net operating income (column 1) and its pre-remand determination of the capitalization rate (column 2):

| 1977 | $188,883.00 | .13685 | $1,380,219.00 |
| 1978 | $255,108.00 | .136345 | $1,871,048.00 |
| 1979 | $194,030.00 | .139495 | $1,390,946.00 |