COMSTOCK VILLAGE LIMITED DIVIDEND HOUSING
ASSOCIATION v COMSTOCK TOWNSHIP

Docket No. 90477. Submitted June 16, 1987, at Grand Rapids. Decided
June 6, 1988. Leave to appeal applied for.

Comstock Village Limited Dividend Housing Association, owner
of a governmentally subsidized apartment complex in Comstock
Township, Kalamazoo County, petitioned the Michigan Tax
Tribunal to review the property tax assessments on the com-
plex for 1982 through 1984. The Tax Tribunal adopted a
capitalization of income approach which resulted in assess-
ments which, though higher than what the petitioner felt were
proper, were lower than the assessments made by the township.
Petitioner appealed by leave granted. The township cross-ap-
pealed.

The Court of Appeals *held:*

1. Petitioner's arguments concerning the use of replacement
costs of certain federally mandated features is inapposite in
that the Tax Tribunal used a capitalization of income method
rather than a replacement cost method to determine the appro-
priate true cash value.

2. The Tax Tribunal properly treated the rent subsidy pro-
vided by the federal government as income in calculating the
true cash value. The record fails to establish that a portion of
those subsidies are not available to the property owners.

3. The Tax Tribunal's determination that a capitalization of
income approach was proper under these circumstances cannot
be said to be clearly erroneous.

4. It was not error for the Tax Tribunal to use a realistic
market mortgage interest rate rather than the artificially low
interest rate contained in the mortgage for the subject prop-
erty. The Supreme Court case which made the use of the

REFERENCES

Am Jur 2d, State and Local Taxation §§ 761, 762.

Am Jur 2d, Taxpayers' Actions §§ 47, 65.

Requirement of full-value real property taxation assessments. 42
ALR4th 676.

Income or rental value as a factor in evaluation of real property for
purposes of taxation. 96 ALR2d 666.

market interest rates prospective from January 1, 1986, is not applicable. It cannot be said that the Tax Tribunal's adoption in this case of the market interest approach amounted to the adoption of a wrong principal.

Affirmed.

MACKENZIE, J., dissented in part. She would hold that it was an error of law for the Tax Tribunal to fail to use the actual mortgage interest rate in determining the true cash value by the capitalization of income method.

1. TAXATION — APPEAL — TAX TRIBUNAL.

The Court of Appeals has only limited jurisdiction to review decisions of the Michigan Tax Tribunal; where no fraud is alleged, review is limited to the questions of whether the tribunal committed an error of law or adopted a wrong legal principle (Const 1963, art 6, § 28; MCL 205.753[1]; MSA 7.650[53][1]).

2. TAXATION — LOW-INCOME HOUSING — TRUE CASH VALUE — RENTAL SUBSIDIES.

The Michigan Tax Tribunal may properly include rental subsidies provided by the federal government when calculating the true cash value of a low-income housing apartment complex under the income capitalization approach.

3. TAXATION — TRUE CASH VALUE — CAPITALIZATION OF INCOME — INTEREST RATES.

In appeals of tax assessments for tax years prior to January 1, 1986, the Michigan Tax Tribunal is not prohibited from using a realistic market mortgage interest rate rather than the artificially low interest rate contained in the mortgage for a governmentally subsidized low-income housing project when calculating the true cash value of the housing project by the capitalization of income method of valuation.

*Terry Lewis,* for petitioner.

*Bauckham, Reed, Lang, Sparks, Rolfe & Thomsen, P.C.* (by *Richard D. Reed* and *Lynda E. Thomsen*), for respondent.

Before: SAWYER, P.J., and MACKENZIE and W. J. CAPRATHE,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

W. J. CAPRATHE, J. This case involves the appeal as of right of petitioner, Comstock Village Limited Dividend Housing Association and the cross-appeal of respondent, Comstock Township, from a Michigan Tax Tribunal decision concerning the lawfulness of the property tax assessments issued for the housing association's commercial realty for 1982 through 1984. Both the housing association and the township challenge the Tax Tribunal's determination of true cash value and, in particular, the tax treatment of governmental rental subsidies and regulations connected with the commercial realty. We affirm.

I

The commercial realty in question is a governmentally subsidized 112-unit apartment complex in Comstock Township near Kalamazoo. Project construction was completed in about 1980. The project is owned by the housing association, a limited partnership.

Capital contributions of the housing association's partners, including subscriptions receivable, was $800,210. The project was financed by a mortgage loan. The cost of the project was $4,233,260. The forty-year term mortgage loan was in the amount of $4,312,604. The interest rate was 8.97 percent per annum. The difference between the cost and the loan takes into account escrow requirements to assure the project's future feasibility.

The mortgage loan was obtained through the Michigan State Housing Development Authority (MSHDA), which is a public body created by the MSHDA act of 1966, MCL 125.1401 *et seq.*; MSA 16.114(1) *et seq.* One purpose of the MSHDA act was to take advantage of available federal funds for housing projects. The project was operated as part

of a program under § 8 of the United States Housing Act of 1937, 42 USC 1437f. This program was designed to assist lower income families with housing and to promote economically mixed housing.

Under the § 8 program, the rents charged by the housing association are federally regulated in accordance with a Housing Assistance Payment contract, which also provides for federal rental subsidies. The rental rates are based on fair market rents for the area and on whether such rents can feasibly support the project's debt service and operations.

It appears that the housing association's first year of operation was 1981. The assessment issued by the township for tax date December 31, 1981, was $1,342,500. The housing association timely protested the assessment to the township's board of review, but was not granted relief.

On June 21, 1982, the housing association filed a petition for review of its 1982 assessment. The housing association's later motions to amend its petition to add the 1983 and 1984 assessment years were granted. The housing association's assessments on the rolls for 1982, 1983 and 1984 were $1,342,500, $1,409,600, and $1,564,000.

The evidentiary hearing on the assessments commenced on February 11, 1985, with Hearing Officer Roger Groves presiding. On April 26, 1985, the hearing officer entered a proposed judgment on his determination of true cash value. The township's income approach to valuation was adopted. On January 22, 1986, Tax Tribunal Judge William Koney vacated the proposed judgment and entered his own determination of true cash value under the income approach. The township's motion for a rehearing was denied.

The true cash values advanced by the housing

association and the township as well as the findings of the Tax Tribunal are as follows:

| True Cash Value | 1982 | 1983 | 1984 |
|---|---|---|---|
| Per housing association | $2,400,000 | $2,400,000 | $2,400,000 |
| Per township | 3,981,400 | 4,280,000 | 4,591,300 |
| Per Tax Tribunal | 2,741,270 | 3,202,207 | 3,480,488 |

The assessment level was fifty percent of the true cash value for each year. Both parties now appeal from the determinations of the Tax Tribunal.

## II

The scope of this Court's review of Tax Tribunal decisions in property tax valuation cases is limited. When fraud is not alleged, the question is whether the Tax Tribunal committed an error of law or adopted a wrong principle. Const 1963, art 6, § 28; *Teledyne Continental Motors v Muskegon Twp,* 145 Mich App 749; 378 NW2d 590 (1985). A decision of the Tax Tribunal is an "error of law" if it is not supported by competent, material and substantial evidence. *Connors & Mack Hamburgers, Inc v Dep't of Treasury,* 129 Mich App 627; 341 NW2d 846 (1983). "Substantial evidence" must be more than a scintilla of evidence, though it may be substantially less than the preponderance of evidence necessary for most civil cases. *Holy Spirit Ass'n for the Unification of World Christianity v Dep't of Treasury,* 131 Mich App 743; 347 NW2d 707 (1984).

Petitioner's and respondent's respective claims are that the Tax Tribunal's determination of true cash value was based on wrong principles. A proceeding before the Tax Tribunal is de novo. MCL 205.735(1); MSA 7.650(35)(1). The burden of proof is on the taxpayer to establish the true cash value

of his property. MCL 205.737(3); MSA 7.650(37)(3). The Tax Tribunal, however, is obligated to make an independent determination of true cash value, utilizing an approach which provides the most accurate valuation under the circumstances of the individual case. *Antisdale v City of Galesburg*, 420 Mich 265; 362 NW2d 632 (1984).

The weight given to evidence is a matter within the Tax Tribunal's discretion. *Kern v Pontiac Twp*, 93 Mich App 612; 287 NW2d 603 (1979). The weighing process involves a considerable amount of judgment and reasonable approximation. *Consumers Power Co v Port Sheldon Twp*, 91 Mich App 180; 283 NW2d 680 (1979). If neither party's valuation figure is accurate, the tribunal should be free to reject both. However, the tribunal should not substitute some other figure which may be equally lacking in evidentiary support. *Clark Equipment Co v Leoni Twp*, 113 Mich App 778; 318 NW2d 586 (1982).

III

The housing association claims three errors. First, relying on *First Federal Savings & Loan Ass'n of Flint v Flint*, 415 Mich 702; 329 NW2d 755 (1982), the housing association claims that the Tax Tribunal adopted a wrong principle in basing true cash value upon the replacement cost of the property's "over-improvements." It claims that an assessment based on a cost approach ignores the additional costs in complying with federal construction and management regulations. We find no merit to this argument.

At issue in *First Federal* was the Tax Tribunal's adoption of a cost approach in determining the true cash value of a renovated building in downtown Flint which was occupied and owned by the

bank. Our Supreme Court concluded that the Tax Tribunal adopted a wrong principle in including, as part of the bank's valuation, those expenditures made by the bank to enhance its own image, without regard to whether they added to the selling price of the building.

The housing association's reliance on *First Federal* is misplaced in the instant case because the Tax Tribunal did not adopt a cost approach to valuation, but instead adopted an income approach. *First Federal* only applies when a cost approach is used.

Second, the housing association contends that the Tax Tribunal's capitalization of income approach to value was based on a wrong principle in that rental subsidies were included in the project's net operating income. Relying on *Congresshills Apartments v Ypsilanti Twp (After Remand),* 128 Mich App 279; 341 NW2d 121 (1983), the housing association argues that a subsidy cannot be incorporated in any way in arriving at true cash value. We conclude that the housing association's reliance on *Congresshills Apartments* is misplaced.

The issue in *Congresshills Apartments* was the interest subsidy that was taken into account in calculating the capitalization rate for the property. The basis for the holding in the case was that the "interest subsidy is an intangible asset or benefit which cannot properly be subject to taxation as 'real' or 'tangible' property under Const 1963, art 9, § 3." *Id.* at 283.

Here what was taken into account in reaching true cash value was not an interest subsidy, but a rental subsidy provided by the federal government. This subsidy was no more intangible than the actual rents paid by the tenants. A review of the regulatory agreement does not reveal any use restrictions on the rental subsidy, beyond its use

as a method for making mortgage loan and other payments due MSHDA. The substance of the subsidy as it pertains to the project was rental income. *Dowagiac Limited Dividend Housing Ass'n v Dowagiac,* 166 Mich App 232; 420 NW2d 114 (1987). Accordingly, we find no error of law in the Tax Tribunal's use of the value of the rent subsidies in calculating true cash value.

The housing association's last claim is really an extension of its claim that the Tax Tribunal erred in considering the rental subsidies when computing true cash value. The housing association claims that the portion of federal rent subsidies deposited as "residual receipts" to an operating reserve account under MSHDA's control represents no value to the owner and, to the contrary, has a negative effect on the tax shelter component of the property's value. Based on its claim that the "residual receipts" must be remitted to the Department of Housing and Urban Development at the end of the rental subsidies contract, the housing association contends that the treatment of these receipts as income results in a grossly exaggerated net operating income amount to be capitalized.

We find the housing association's contention to be lacking in factual support. The housing association has failed to identify the amount, if any, of "residual receipts" deposited by the project with MSHDA. The financial statements do not show the deposit of any funds with MSHDA. As of December 31, 1983, the financial statements disclose a project accumulated deficit of $1,498,770. Furthermore, it is apparent from the regulatory agreement, as a whole, that limitations are placed on the income stream and equity yield available to a potential investor. To the extent that those limitations affected the usual selling price of the project, it was

not improper for the Tax Tribunal to consider them.

In summary, we conclude that the housing association has failed to demonstrate that the Tax Tribunal adopted wrong principles in applying its capitalization of income approach to value. Accordingly, the rulings of the Tax Tribunal concerning the housing association are affirmed.

IV

The township raises two arguments. First, it argues that the Tax Tribunal adopted a wrong principle in rejecting the township's submarket approach to assessing the housing association's property. Under the approach, the variables used in determining the true cash value of the property are drawn strictly from that portion of the market involving federally subsidized units. We find this argument lacking in merit. While the township's submarket approach, in theory, may have some merit, it is difficult to address its merits in the absence of any showing by the township on how the approach relates to the Tax Tribunal's determination of true cash value in the present case. The Tax Tribunal concluded that the submarket concept did not reflect the true cash value or fair market value of the property. From our review of the record, we cannot conclude that the tribunal's decision was erroneous.

Second, the township argues that the Tax Tribunal erred in using the market interest rate rather than the interest rate contained in the government financing instrument when calculating the overall capitalization rate. The Tax Tribunal's overall capitalization rate was based on a mortgage interest rate of fourteen percent, the market rate at the time. The township argued that the

Tax Tribunal should have used the 8.97 percent interest rate contained in the mortgage agreements between the housing association and the federal lenders.

The township's argument for use of the 8.97 percent interest rate is based on the assumption that a potential investor would assume the existing MSHDA mortgage. Thus, argues the township, it is not necessary to compare that rate to the prevailing market rate. By comparison, the housing association argues that the thirteen to fifteen percent interest rates represented the prevailing rates for both secondary, subsidized HUD mortgages and conventional mortgages. The fourteen percent interest rate adopted by the Tax Tribunal as a "realistic market mortgage interest rate" was squarely between the housing association's range of estimates.

Resolution of this issue is governed by our Supreme Court's disposition in *Washtenaw Co v State Tax Comm*, 422 Mich 346; 373 NW2d 697 (1985). There, the Court ruled that to arrive at the true cash value of property, the value of artificially low financing must be separated from the sale price. Significantly, the case was given only prospective application. Since it was released on September 4, 1985, well after the 1982 through 1984 assessments involved in this case, it is not applicable. We note that in a case presenting a similar issue, this Court upheld the Tax Tribunal's decision to use the interest rate contained in the government financing instrument when calculating the overall capitalization rate. *Dowagiac LDHA v Dowagiac, supra.* However, nothing in that case indicates that it would have been improper to use the market interest rate.

The Tax Tribunal, when calculating the overall capitalization rate, did not adopt a wrong legal

principle in utilizing the market rather than the actual interest rate.

We affirm the decision of the Tax Tribunal.

SAWYER, P.J. concurred.

MACKENZIE, J. *(dissenting in part)*. In my view, the Tax Tribunal erred in using the market interest rate rather than the below market interest rate contained in petitioner's mortgage when calculating the overall capitalization rate.

Prior to the Supreme Court's decision in *Washtenaw Co v State Tax Comm,* 422 Mich 346; 373 NW2d 697 (1985), the amount paid for financing could be used in determining the cash value of real property for the purpose of assessing taxes. Had *Washtenaw Co* applied to this case, then I would agree that the Tax Tribunal adopted a correct principle in attempting to extract the value of favorable financing terms in determining the subject property's true cash value. *Washtenaw Co,* however, was accorded only prospective application, applying to all assessments conducted after January 1, 1986, and all equalizations based on those assessments. Hence it has no application to the tax years in dispute here.

I would therefore hold that for the tax years in dispute in this case, the Tax Tribunal committed an error of law in failing to use the actual mortgage rate contained in the subject project's mortgage note.