COLONIAL TOWNHOUSES COOPERATIVE v CITY OF LANSING

Docket No. 99872. Submitted May 5, 1988, at Lansing. Decided
September 19, 1988.

Colonial Townhouses Cooperative and Highlands Cooperative
Associates petitioned the Tax Tribunal regarding the proper
determination of true cash value of real property. Petitioners
are nonprofit cooperative associations providing low-income
federally subsidized multi-unit housing. The Tax Tribunal de-
termined the value of the realty with reference to a methodol-
ogy described as a variant of the market approach. In its
calculation, the Tax Tribunal determined the value of the
mortgage component by finding the cash equivalents of the
remaining payments owed on the mortgages and the value of
the equity component by multiplying the number of housing
units by the transfer value of each unit (fixed by regulation).
The valuations of these two components along with the balance
of cash reserve accounts were added together to arrive at the
final determination of true cash value. Petitioners appealed,
raising two issues: (1) whether the Tax Tribunal erred by
applying the market interest rate applicable at the inception of
the mortgage-backed debt (as opposed to the present market
interest rate) in its calculation of the present value of the
remaining indebtedness for purposes of calculating the mort-
gage component; and (2) whether the Tax Tribunal erred by
adding the cash reserve accounts to the mortgage and equity
components.

The Court of Appeals *held:*

1. The tribunal should have used interest rates applicable at
the time of evaluation, not at the time of inception of the loans.

2. The tribunal properly took the cash reserve accounts into
consideration but erred in just adding the account balances to
cash value dollar for dollar. The accounts are highly regulated
and will add value to the property at some rate less than dollar
for dollar.

Reversed and remanded.

REFERENCES

Am Jur 2d, State and Local Taxation §§ 753 *et seq.*, 759 *et seq.*

Sale price of real property as evidence in determining value for tax
assessment purposes. 89 ALR3d 1126.

1. Taxation — Assessment of Real Property — True Cash Value
— Mortgages.

When determining the true cash value of a piece of property on
which there is a mortgage at a below-market interest rate by a
method which takes the mortgage into account, it is proper to
reduce the mortgage to its cash equivalent using interest rates
prevailing at the time of valuation.

2. Taxation — Assessment of Real Property — True Cash Value.

True cash value, the basis for tax assessment, is the usual selling
price at the place where the property to which the term is
applied is at the time of assessment, being the price which
could be obtained for the property at private sale, and not at
auction sale or at forced sale; it is essentially fair market value
(MCL 211.27[1]; MSA 7.27[1]).

3. Taxation — Assessment of Real Property — Cash Reserve
Accounts.

The cash reserve account of a property having such an account
tends to increase the value of the property and the tax assessor
may properly raise the valuation to reflect the added value
when determining true cash value; the raise should accurately
reflect the added value and need not correspond dollar for
dollar.

*Terry Lewis,* for plaintiffs.

*Alvan P. Knot,* City Attorney, for defendant.

Before: Doctoroff, P.J., and Holbrook, Jr., and
C. Jobes,* JJ.

Holbrook, Jr., J. This appeal is taken by peti-
tioner taxpayers from a decision of the Tax Tribu-
nal regarding the proper determination of true
cash value for purposes of the ad valorem property
tax imposed pursuant to the General Property Tax
Act, MCL 211.1 *et seq.;* MSA 7.1 *et seq.* At issue
are tax years 1984, 1985, and 1986. Petitioners
challenging the valuation are nonprofit coopera-

* Recorder's Court judge, sitting on the Court of Appeals by assign-
ment.

tive organizations providing low-income federally subsidized multi-unit housing. Construction and financing of this housing was accomplished pursuant to a federal program operating under the authority of § 221 of the National Housing Act. Because of a substantial federal subsidy, the mortgage indebtedness was incurred at below-market interest rates ranging from 3 to 3½ percent. Federal regulations and agreements with the Federal Housing Authority pervasively restrict and control many aspects of petitioners' and residents' relationships with the cooperative projects, including the terms and conditions of occupancy of the housing units and of transfer of property interests in the cooperatives. Administrative oversight is provided by the FHA.

The Tax Tribunal determined the value of the realty with reference to a methodology described as a variant of the market approach. In its calculation, the Tax Tribunal determined the value of the mortgage component by finding the cash equivalents of the remaining payments owed on the mortgages and the value of the equity component by multiplying the number of housing units by the transfer value of each unit (fixed by regulation). The valuations of these two components along with the balance of cash reserve accounts were added together to arrive at the final determination of true cash value. On appeal, petitioners challenge this valuation in two specific respects: (1) whether the Tax Tribunal erred by applying the market interest rate applicable at the inception of the mortgage-backed debt (as opposed to the present market interest rate) in its calculation of the present value of the remaining indebtedness for purposes of calculating the mortgage component; and (2) whether the Tax Tribunal erred by adding the cash reserve accounts to the mortgage and

equity components. We agree with petitioners as to both claims and reverse.

Initially, we note that the standard of review to be applied to a decision of the Tax Tribunal is deferential. We may not grant the petitioners' requested relief on appeal unless the decision below resulted from fraud, errors of law, or the adoption of wrong principles. Const 1963, art 6, § 28. Since, however, petitioners' claims raise questions of law, our undertaking of review is appropriate.

Regarding petitioners' first claim, we conclude that a proper determination of true cash value of the mortgage component must be premised on the market interest rate prevailing at the time of valuation. Regardless of the specific methodology applied, the determination of value must represent the amount that could be obtained in a sale subject to *current* market conditions. If the property is restricted, e.g., by regulations imposed as a condition of a federal subsidy, the valuation must reflect a diminution to the extent that the restriction impairs the value. See *Pinelake Housing Cooperative v Ann Arbor,* 159 Mich App 208, 221-222; 406 NW2d 832 (1987). However, any value attributable to an interest subsidy or other creative financing afforded by the federal government must be excluded from the valuation. *Id.,* p 222; *Tradewinds East Associates v Hampton Charter Twp,* 159 Mich App 77, 87-88; 406 NW2d 845 (1987), lv den 428 Mich 920 (1987). See *Washtenaw Co v State Tax Comm,* 422 Mich 346; 373 NW2d 697 (1985). But cf. *Meadowlanes Ltd Dividend Housing Ass'n v City of Holland,* 156 Mich App 238, 248-252; 401 NW2d 620 (1986), lv den 428 Mich 866 (1987). We note that this Court in *Meadowlanes* approved the practice of valuing the mortgage component of a property by calculating

the present value of future payments required to retire the indebtedness with reference to market interest rates current as of the date of valuation. See 156 Mich App 247 ("The mortgage value of petitioner's interest was established by determining how much an individual would have to invest *today* in order to earn enough interest to offset the $6,660.90 monthly payments" [emphasis added]). See also *Comstock Village Ltd Dividend Housing Ass'n v Comstock Twp,* 168 Mich App 755, 763-764; 425 NW2d 702 (1988) (held proper to use the current market rate in calculating the capitalization rate under the income approach). However, *Meadowlanes* does not address the propriety of utilization of the market interest rate at the inception of the loan vis-à-vis the market rate at the date of valuation.

In *Antisdale v City of Galesburg,* 420 Mich 265; 362 NW2d 632 (1984), the Court addressed the problem of valuation of an outstanding mortgage balance on a federally subsidized housing complex and concluded that the remaining payments necessary to retire the mortgage must be discounted to present value. Although the Court did not speak directly to the question presented here, it intimated the answer when it stated:

> The fatal flaw in respondent's analysis is in its claim that the outstanding mortgage balance of a mortgage bearing an interest rate well below market rates has a dollar for dollar relationship to the value of the property. We do not accept that claim. Assuming a mortgage bearing a 1% interest rate in the market of 1977, 1978, or even today, does not translate into the assumption of a liability, or a value to the seller, in the amount of principal which remains to be paid on that 1% mortgage. We find the analysis of the Tax Tribunal in *Meadowlanes Limited Dividend Housing Ass'n v City of Holland,* unpublished opinion, Docket No.

55933, decided January 6, 1984,[1] instructive on that point:

"A mortgage is an intangible asset. Although some intangible assets are equivalent to their face values, many are not. The mortgage instrument in question was neither new, nor competitive as to its interest rate. All [the owners' appraiser] did was to apply a discount rate which was prevalent in the commercial paper marketplace, so as to reflect the amount of currency which could be commanded by such instrument as of the tax date.

"*If such mortgage instrument had been dated as of the tax date, and if it had contained terms and interest rate which were then competitive with other similar commercial paper then selling at face value, then its face (or nominal) value would have been the same as its cash equivalence, and adjustment would have been unnecessary.*" [*Id.*, pp 280-281. Emphasis supplied.]

The adjustment contemplated in *Antisdale* to require discounting of the balance of outstanding mortgage payments to present value can only be accomplished with market rates current as of the tax assessment date. Otherwise, the resultant value is not consistent with the underlying assumption that the property has been sold to a hypothetical buyer on the date of valuation, an assumption that renders irrelevant the market rate at the inception of the debt.

We further find that our conclusion is implicit in the standard of true cash value, the basis for tax assessment, which is statutorily defined as "the usual selling price at the place where the property to which the term is applied is at the time of assessment, being the price which could be obtained for the property at private sale, and not at auction sale . . . or at forced sale." MCL 211.27(1);

---

[1] The Tax Tribunal's decision in *Meadowlanes* was later modified by this Court. See 156 Mich App 238.

MSA 7.27(1). Cash value is essentially fair market value. See *Xerox Corp v Oakland Co,* 157 Mich App 640, 647; 403 NW2d 188 (1987), lv den 428 Mich 913 (1987). Like the discussion in *Antisdale,* the statute also contemplates valuation as a function of a hypothetical sale with a hypothetical buyer. It would be nonsensical to use market interest rates at the inception of the indebtedness to calculate that amount that a hypothetical buyer would have to invest in order to realize interest income sufficient to cover the remaining obligations on the mortgage. See *Antisdale, supra,* pp 282-283. We direct the Tax Tribunal on remand to recalculate the mortgage component in light of market interest rates current as of the valuation dates for the tax years at issue in this case.

Petitioners next challenge the propriety of the Tax Tribunal's addition of the current balance of cash reserve accounts to the sum of equity and debt components comprising the value determination. By federal regulation, petitioners were required to maintain specified cash balances as a general operating reserve for the purposes of satisfying deficiencies caused by cooperative members' delinquent payments and of purchasing stock from a withdrawing member. Petitioners were also required to maintain a replacement reserve account in order to finance replacement of structural elements and mechanical equipment.

We agree with the Tax Tribunal that the cash reserve accounts had a tendency to increase the value of the properties. Federal regulations required these accounts to be maintained as part of the ongoing subsidy program and strictly regulated the uses and applications of the accounts. In many instances, disbursements from the accounts required FHA approval. Thus, the account balances and the concomitant governmental regulations

were factors "external to [the] property that influence and determine its real value." *Washtenaw Co, supra,* p 366. As such, it was proper for the Tax Tribunal to recognize that valuation should be increased to reflect any added value to petitioners. We reject petitioners' argument that cash reserve accounts should be deducted from the sum of the mortgage and equity components comprising the value of the property. Petitioners' suggestion that the cash reserve accounts are analogous to the known cash contents of a safe sold along with a house is oversimplistic and misses the point that the reserve accounts are inextricably linked to the property by reason of the federal regulations and FHA administrative oversight.

However, we do conclude that the Tax Tribunal erred by valuing the accounts in the amount of their cash balances on a dollar for dollar basis. Because of the highly regulated and restricted nature of the accounts, the balances of the funds must necessarily be adjusted downward in order to reflect their present value to petitioners. It would ignore the realities of the restrictions imposed by the federal regulatory mechanisms to conclude that the accounts should be added to the true cash value because the account balances would pass to the buyer of a housing unit on a dollar for dollar basis.

The finding of true cash value is the province of the Tax Tribunal. We will not attempt to determine the correct value in this appeal. *Antisdale, supra,* pp 285-286; *Pinelake, supra,* p 228. On remand, we direct the Tax Tribunal to ascertain the additional increment to true cash value attributable to the cash reserves, if any, and to adjust the assessment accordingly.

Reversed and remanded for redetermination of true cash value to reflect the present value of the

mortgage component and the cash reserve accounts in a manner consistent with this opinion.